UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------
:
CAROL DEPALMA, :
: 16cv8933
Plaintiff, :
: OPINION & ORDER
-against- :
:
MAYA MURPHY, P.C., *et al.*, :
:
Defendants. :
:
---------------------------------------------

WILLIAM H. PAULEY III, District Judge:

    Plaintiff Carol DePalma ("DePalma") brings this action against H. Daniel Murphy, Esq., his law firm Maya Murphy, P.C. (together, "Murphy"), and accounting firm Klein Liebman & Gresen, LLC ("KLG"), alleging malpractice, breach of contract, and negligence. Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(c). For the reasons that follow, KLG's motion is granted and Murphy's motion is denied.

## BACKGROUND

    This dispute arises out of DePalma's divorce from her now ex-husband, Vince DePalma ("Vince"). (Complaint, ECF No. 1 ("Compl.") ¶ 9.) Their divorce was adjudicated in the Supreme Court of the State of New York, Nassau County, from 2013 to 2015. (Compl. ¶ 9.) DePalma retained Murphy to represent her. (Compl. ¶ 11.) Vince's equity interest in Shred-It International, Inc. ("Shred-It"), a Canadian-based document shredding company, was one of the largest assets in the marital estate. (Compl. ¶ 13.) Vince was Shred-It's CEO. (Compl. ¶ 13.)

    In August 2013, the state court directed the parties to retain a neutral appraiser to value Vince's interest in Shred-It. (Compl. ¶ 15.) The parties chose, and the court appointed, KLG. (Compl. ¶ 15; Affidavit of Glenn S. Liebman ("Aff."), Ex. 1 ("Order Appointing

Appraiser") at 2; Ex. 2 ("Retainer Agreement").)  The Retainer Agreement provided that unless directed otherwise by the parties, KLG would appraise Vince's interest in Shred-It as of May 29, 2013—the date the divorce proceedings commenced.  (Retainer Agreement at 1.)  The Retainer Agreement also provided that subsequent events such as mergers, acquisitions, and public offers could have a significant impact on value, but would not be taken into account in the analysis.  (Retainer Agreement at 1.)  No party objected.

KLG issued two reports—one in March 2014 valuing Vince's vested shares and another in May 2014 valuing Vince's options.  (Aff. Ex. 3.)  KLG estimated Vince's total equity interest to be $1,549,801 and assessed Shred-It's aggregate value to be approximately $100 million.  (Compl. ¶¶ 18–19.)  In both reports, KLG reiterated the possible impact of subsequent events on those valuations.  (Aff. Ex. 3 at 3, 26.)

In the interval between issuance of the two KLG reports, Shred-It acquired Cintas, Inc. ("Cintas"), another document shredding company.  (Compl. ¶ 20.)  KLG did not account for this merger in its second report, again valuing Vince's interest as of May 29, 2013.  (Aff. ¶ 12.)  In November 2014, roughly eight months after the merger and twelve days before trial, Murphy requested that the state court direct KLG to update its valuations, arguing that Vince's equity interest had likely risen substantially as a result of the merger.  (Aff. Ex. 4.)  Apparently, a law secretary informed the parties that Vince's request would be denied.  (July 13, 2017 Hr'g Tr. 7:12–23.)  Twelve days later, DePalma and Vince entered into a stipulation of settlement resolving their matrimonial action.  (Compl. ¶ 10.)

DePalma received approximately 50% of Vince's equity interest based on KLG's valuation.  (Declaration of Mark K. Anesh in Support of Maya Murphy's Motion to Dismiss Plaintiff's Complaint, ECF No. 29, Ex. 3.)  The state court entered a judgment of divorce in

March 2015.  (Compl. ¶ 10.)  In July 2015, Stericycle, Inc., another shredding company, acquired Shred-It for $2.3 billion.  (Compl. ¶ 20.)

DePalma claims that because Murphy and KLG failed to revalue Vince's interest after the Cintas merger, she received a substantially lower settlement.  She alleges that KLG breached its contract with the parties and negligently valued Vince's shares.  She also asserts that Murphy committed legal malpractice by blindly accepting KLG's reports and failing to adequately seek a new valuation after the Cintas merger.  Murphy and KLG each move to dismiss.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the factual allegations in a complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.  Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter" to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009) (internal citation omitted).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In making this determination, the Court may consider "any statements or documents incorporated in [the Complaint] by reference."  Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (internal citation omitted).

"Where a Rule 12(c) motion asserts that a court lacks subject matter jurisdiction, the motion is governed by the same standard that applies to a Rule 12(b)(1) motion."  Cruz v. AAA Carting & Rubbish Removal, Inc., 116 F. Supp. 3d 232, 239 (S.D.N.Y. 2015) (internal citation omitted); see also SEC v. Rorech, 673 F. Supp. 2d 217, 220 (S.D.N.Y. 2009) (the same standards apply to a Rule 12(c) motion as those under Rule 12(b)).  On such a motion, a court

must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (internal citation omitted), aff'd 561 U.S. 247. "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter to which the court can take judicial notice for the factual background of the case." L–7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (internal citation omitted).

## DISCUSSION

A. Domestic Relations Exception and Rooker-Feldman Doctrine

Murphy and KLG challenge this Court's jurisdiction, arguing that it is barred by both the domestic relations exception and the Rooker-Feldman doctrine. These legal principles are analyzed in turn.

The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). It also bars federal jurisdiction over "matrimonial issues or issues 'on the verge' of being matrimonial in nature" in view of "the greater interest and expertise of state courts in this field." Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990). The contours of what counts as "on the verge of being matrimonial" are somewhat ambiguous, but courts in the past have abstained from hearing matters including an application to remove an ex-husband's name from loans held jointly with his ex-wife, Hamilton v. Hamilton–Grinols, 363 F. App'x 767, 769 (2d Cir. 2010), and a petition to confirm an arbitration award between ex-spouses arising from an audit of marital assets. Genger v. Genger, 252 F. Supp. 3d 362, 367 (S.D.N.Y. 2017).

But the domestic relations exception is "very narrow." Williams v. Lambert, 46 F.3d 1275, 1283 (2d Cir. 1995). This Court must consider whether the claims "begin and end in

4

a domestic dispute" such that it is at heart, a matrimonial dispute. Schottel v. Kutyba, 2009 WL 230106, at *1–2 (2d Cir. Feb. 2, 2009) (summary order).

This exception does not apply to DePalma's case. She has not brought an action seeking a greater portion of Vince's Shred-It interest, nor is she seeking to revise her divorce settlement. The relief she seeks instead arises from her view that Murphy and KLG provided negligent representation in connection with her divorce. This is not a matrimonial action masquerading as a tort, as Defendants allege, but rather a tort action that incidentally involves DePalma's divorce proceedings. See Ankenbrandt, 504 U.S. at 704 (domestic relations exception did not apply to claims primarily based in tort); Sykes v. Bank of Am., 723 F.3d 399, 404 (2d Cir. 2013) (per curiam).

Resolving DePalma's claims requires questioning the adequacy of Murphy and KLG's performance, not interpreting the settlement agreement or any party's rights thereunder. This case does not "begin and end in a domestic dispute." Schottel, 2009 WL 230106, at *1. This Court is no less equipped to analyze and consider malpractice and business valuation issues than a state matrimonial court. Moreover, any damages arising from these claims will not be apportioned from the marital estate—they will instead be attributable to Defendants as a means to compensate DePalma for any loss that she may have suffered.

KLG also contends that this action is barred by the Rooker-Feldman doctrine. This judicially-created abstention doctrine blocks "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting the district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); see also Hoblock v.

5

Albany Cty. Bd. of Elections, 422 F.3d 77, 83–86 (2d Cir. 2005) (Rooker-Feldman bars what "are, in substance, appeals from state-court judgments.").

This doctrine is also inapplicable. DePalma is not appealing a state court ruling, nor does she ask this court to overturn a state court judgment. Her arguments instead lie with the actions that Murphy and KLG took in preparing her case. Abstention is therefore unwarranted.

Accordingly, DePalma appropriately invokes this Court's subject-matter jurisdiction.

B. Breach of Contract Claim Against KLG

Turning to the merits of the allegations, DePalma claims both breach of contract and negligence against KLG. "Under New York law, a plaintiff may not assert breach of contract claims and tort claims based on the same underlying facts, because, in such circumstances, the two claims are duplicative or redundant." In re MF Global, Inc., 496 B.R. 315, 322 (S.D.N.Y. 2013). "A claim for breach of contract is properly dismissed as redundant of a malpractice claim where it does not rest upon a promise of a particular or assured result, but rather upon defendant's alleged breach of professional standards." Diamond v. Sokol, 468 F. Supp. 2d 626, 640 (S.D.N.Y. 2006) (internal quotation and alterations omitted).

Here, DePalma bases her breach of contract claim on KLG's alleged "failures to apply generally accepted standards and methodologies . . . and [failure] to exercise good faith and care required under the [Retainer A]greement." (Compl. ¶ 32.) DePalma does not allege that KLG promised any particular or assured results. Accordingly, this claim is entirely duplicative of her negligence claim. It therefore fails as a matter of law and is dismissed.

C. Negligence Claim Against KLG

DePalma next claims that KLG conducted its valuation of Vince's assets negligently, "significant[ly] undervaluing" them. (Compl. ¶¶ 38–39.) She specifically alleges that KLG: (1) created internally inconsistent valuation reports; (2) employed only one method of valuation; (3) determined Vince's valuation based on Shred-It's own internal numbers, rather than an independent analysis; and (4) failed to update its reports to account for Shred-It's subsequent merger. (Compl. ¶ 17.)

The state court appointed KLG as a "neutral financial evaluator." (Order Appointing Appraiser at 2.) Authority on a specific negligence standard for such a role is scant, so this Court evaluates KLG's actions against a general negligence standard. In New York, negligence requires establishing: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." Pasternack v. Lab. Corp. of Am. Holdings, 59 N.E.3d 485, 490 (N.Y. 2016).

DePalma's argument that KLG was negligent in not updating its reports after the merger is not persuasive. KLG informed the parties that May 29, 2013 would be the date for all valuations, "unless directed by the Court or pursuant to a stipulation in writing from both parties' attorneys." (Retainer Agreement at 1.) No one objected, and KLG never received an instruction to change the date. (Aff. ¶ 14.) Indeed, if KLG had changed the valuation date or updated its reports sua sponte, it would have violated the terms of the Retainer Agreement.

DePalma's retort that she never signed the Retainer Agreement is without merit. "[A]n unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound." Flores v. Lower E. Side Serv. Ctr., Inc., 828 N.E.2d 593,

7

597 (N.Y. 2005). Counsel for both parties were well aware of KLG's engagement and its terms, and operated under them for over a year.

DePalma also asserts errors in the specific valuation methods and procedures used. But in a professional negligence claim, like any negligence claim, "a plaintiff must demonstrate . . . a causal connection between its losses and the defendant's actions." MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP, 199 F. Supp. 3d 818, 830 (S.D.N.Y. 2016) (internal citation omitted). The requirement is one of proximate causation, meaning "the cause that directly produces an event and without which the event would not have occurred." Ritchie Capital Mgmt. LLC v. Gen. Elec. Capital Corp., 121 F. Supp. 3d 321, 338 (S.D.N.Y. 2015) (internal citation omitted).

Here, KLG was only an intermediate player in the parties' ultimate decision to settle. Murphy and DePalma were free to choose what weight to give to KLG's conclusions, and could have decided to conduct additional discovery or hire their own expert to do another analysis. (See Order Appointing Appraiser at 4) ("This Order is without prejudice to either party's right to retain their own appraiser/expert to value the assets and/or income at issue in this matter.")

Because DePalma cannot establish that her settlement amount was proximately caused by any of KLG's alleged errors, her negligence claim is dismissed.

D. Legal Malpractice Claim Against Murphy

DePalma asserts a legal malpractice claim against Murphy and his law firm by their: (1) accepting KLG's valuation at face value; (2) not retaining their own expert; (3) not conducting further discovery on the value of Vince's shares; (4) advising DePalma to take the settlement; and (5) not taking the necessary steps to obtain an updated valuation of Vince's

8

shares after the merger with Cintas. (Compl. ¶ 23.) All of these actions, DePalma contends, "result[ed] in a settlement depriv[ing her] of her true entitlement." (Compl. ¶ 24.)

To state a claim for legal malpractice under New York law, a plaintiff must allege: (1) negligence on the part of the attorney; (2) that the negligence is the proximate cause of plaintiff's injury; and (3) actual, ascertainable damages. Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006). A plaintiff must demonstrate that the attorney "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." Dombrowski v. Bulson, 971 N.E.2d 338, 339 (N.Y. 2012) (internal citation omitted). The causation prong requires showing "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." Even Street Prod., Ltd. v. Shkat Arrow Hafer & Weber, LLP, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008) (internal quotation omitted).

Murphy claims that it is unknowable whether the state court would have ordered an updated valuation even if Murphy had earlier requested one. That may be the case, but "[a]t this early stage of the litigation . . . [DePalma] need only allege, not prove, the proximate cause element of the legal malpractice claim." Even Street Prod., Ltd., 643 F. Supp. 2d at 322; see also Barack v. Seward & Kissel, LLP, 2017 WL 4023141, at *4 (S.D.N.Y. Sept. 12, 2017) (denying a motion to dismiss for the same reason).

Here, DePalma has adequately alleged that Murphy's performance deprived her of a court award or settlement much higher than what she actually received. She avers that she informed Murphy of the Shred-It–Cintas merger shortly after it happened, and urged them to seek a reappraisal. (Hr'g 28:19–29:7.) Inexplicably, Murphy waited eight months to inform the court of the merger and request an updated valuation. (Aff. Ex. 4.) That request came less than

9

two weeks before trial. In the eight months leading up to trial, Murphy sought no discovery, conducted no relevant depositions, and chose not to hire an independent expert to perform a second valuation. When the state court denied Murphy's request for a new appraisal, trial was imminent, and Murphy was seemingly left with no alternative but to advise DePalma to settle based on KLG's estimates.

At this nascent stage in the litigation, these allegations are sufficient to survive Murphy's motion to dismiss. Through discovery, the parties may flesh out what would have occurred had Murphy taken additional action, and whether DePalma can provide adequate evidence of malpractice. See Even Street Prods., Ltd., 643 F. Supp. 2d at 322 n.3 (applying the same course of action).

## CONCLUSION

For the foregoing reasons, Defendant KLG's motion to dismiss is granted and Defendant Murphy's motion to dismiss is denied. The parties are directed to submit a joint proposed discovery schedule pursuant to Fed. R. Civ. P. 26(f) by December 15, 2017. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 28 and 30.

Dated: December 1, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.